UNITED STATES of America ex rel. TIE SING ENG, Relator,

v.

John L. MURFF, as District Director of the Immigration Service for the District of New York, or such person, if any, who may have the said Tie Sing Eng in custody, Respondent.

United States District Court
S. D. New York.

Oct. 6, 1958.

Arthur H. Christy, U. S. Atty., New York City, by Roy Babitt, Special Ass't. U. S. Atty., Immigration & Naturalization Service, New York City, for respondent.

Abraham Lebenkoff, New York City, for relator.

WEINFELD, District Judge.

The relator, a Chinese native and citizen, detained under a warrant of deportation, applies for a writ of habeas corpus. He entered the United States legally as a crew member of the S.S. Ternate, a Dutch ship. On December 2, 1956, however, he was ordered deported on the ground that he had remained in the United States beyond the twenty-nine (29) day period permitted him as a nonimmigrant seaman.

At the deportation hearing held in October 1956, the relator's application for voluntary departure to Singapore was granted but the British Government later advised that he would not be admissible there. He has since remained in the United States under successive discretionary stays withholding deportation to the mainland of China upon the ground of likely physical persecution.[1]

His status remained in this posture until September 2, 1958 when he was taken into custody under the following circumstances. In the summer of 1958 the Immigration and Naturalization Service was advised by the Consulate General of the Netherlands that Chinese crewmen sailing on Dutch ships would be guaranteed return, and permitted reentry, to the Netherlands if in possession of "a service and record book", which was deemed the equivalent of a travel document. Since the relator had such documents and came within the prescribed category, he was taken into custody for

1. Immigration and Nationality Act of 1952 § 243(h), 8 U.S.C.A. § 1253(h)

deportation to Holland. Thereupon, on petition by relator's attorney, the present habeas corpus proceeding was instituted. The basic contention is that the relator will not be given permanent residence in Holland because he is a citizen and native of China.

His attorney further charges that once relator arrives in Holland he will be sent out of that country to the port where he was originally hired. In short, it is claimed that the relator is to be taken to Holland by private Dutch shipping interests only as a formality for eventual transportation to an entirely different country. In view of these charges, the Immigration and Naturalization Service obtained from the Dutch Consulate General in New York specific advice that the Netherlands Government was willing to accept the relator as a deportee. There is no assurance, however, that following relator's admission to the Netherlands he will be granted permanent residence there; on the contrary, the relator's contention appears to find support in the official document of the Consulate. The Netherlands Consulate General in reply to a special inquiry put by the relator's attorney advised

> * * * that Mr. Eng Tie Sing [relator], being a deserter from the Netherlands ship 'Ternate', will in the case of his deportation from the United States be transported back to the Netherlands as a passenger by the company which brought him into the United States.

> * * * [T]he Consulate General does not ordinarily know the previous country of residence of deserted seamen. However, assuming Mr. Eng Tie Sing had no previous residence in the Netherlands he will probably be transported back, again as a passenger, to the port where he originally signed on a Netherlands vessel.[2]

Thus the issue posed is whether in

effecting deportation to a country which has expressed willingness to accept an alien into its territory, our Government, under the statute, is required to obtain assurances that the deportee will be granted permanent residence in the accepting country.

Section 243(a) of the Immigration and Nationality Act of 1952[3] provides the procedure for the deportation of aliens. First the alien is given the choice of designating the country to which he prefers to be deported. If that country refuses to accept him or, if, next in order, the country of which the alien is a national or citizen will not accept him into its territory, then the Attorney General is given discretionary power to effect deportation to seven alternative places, including "any country which is willing to accept such alien into its territory". This is the situation in the instant matter. The Netherlands is willing, and has signified its willingness, to accept relator into its territory. But relator urges that there is no purpose on the part of the Netherlands Government to keep him there.

■ The language of the statute is clear. It provides simply for deportation to a country "willing to accept" the alien. It does not impose upon our Government, as a condition of deportation, an obligation to assure that once accepted the deportee will be granted permanent residence or asylum within the accepting country. Undoubtedly Congress could have required the Attorney General to secure assurances from an accepting country with respect to the continued residence of a deportee; but it has not done so.

■ Relator's attorney makes vague and unsubstantiated charges that the end result of relator's deportation to Holland will be his delivery to the mainland of China and that since the Attorney General has withheld the deportation of the relator to that country[4] the purpose and

2. Letter of September 23, 1958 from the Netherlands Consulate General to the Immigration and Naturalization Service.

3 8 U.S.C.A. § 1253(a).

4. In the exercise of his discretionary power under the Immigration and Nationality Act § 243(h), 8 U.S.C.A. § 1253(h).

intent of the statute to protect deportees against the likelihood of physical persecution would be defeated. There is no evidential support to this charge.

Apart from the fact that the Netherlands Government has expressed its willingness to accept relator, other circumstances justify his deportation to Holland. The return to the writ alleges (and it is not disputed) that relator signed on the S. S. Ternate at Rotterdam, Holland and further that his last entry into the United States was from that country. Thus his deportation to Holland is warranted under two additional alternative provisions of the Immigration and Nationality Act of 1952 which grant discretionary power to the Attorney General to effect deportation either "(1) to the country from which such alien last entered the United States;" or "(2) to the country in which is located the foreign port at which such alien embarked for the United States * * * ".5

Petition for writ dismissed.