Carlos MARCELLO, Plaintiff,

v.

Robert F. KENNEDY et al., Defendants.

Civ. A. No. 1035-61.

United States District Court
District of Columbia.

May 22, 1961.

Motion to Vacate Summary Judgment
Denied June 23, 1961.

See also 194 F.Supp. 748.

David Carliner and Jack Wasserman, Washington, D. C., for plaintiff.

David C. Acheson, U. S. Atty., and Gil Zimmerman, Asst. U. S. Atty., Washington, D. C., for defendants.

HOLTZOFF, District Judge.

This is an action for a declaratory judgment to adjudicate that the deportation of the plaintiff Marcello, which has taken place pursuant to the provisions of the 1952 Immigration and Nationality Act, 8 U.S.C.A. § 1251, is invalid. The plaintiff was deported to Guatemala and, promptly upon his deportation, his counsel filed this action in this Court, alleging the deportation was illegal.[1] The matter is before the Court on cross-motions for summary judgment.

The administrative deportation proceeding was instituted on December 30, 1952, on a charge that the plaintiff was convicted in 1938 of a violation of the Marijuana Tax Act. On February 20, 1953, a Special Inquiry Officer of the Immigration and Naturalization Service issued an order of deportation after a hearing. An appeal was taken to the Board of Immigration Appeals and on June 1, 1953, the order of deportation was affirmed by the Board. Immediately

---

1. Originally the defendants filed a motion to dismiss the complaint. As it was later supplemented by affidavits the Court treated it as a motion for summary judgment as provided by Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The plaintiff then filed a cross-motion for summary judgment.

thereafter a series of law suits were instituted in the United States District Court for the Eastern District of Louisiana and in this Court to set aside the deportation order. It is not necessary to recapitulate the long history of this litigation. Suffice it to say that on May 31, 1955, the Supreme Court affirmed the deportation order in Marcello v. Bonds, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107. This decision ended the litigation in respect to the validity of the deportation order. Thereupon, the Immigration and Naturalization Service instituted efforts to effectuate the deportation previously ordered.

An enumeration of the countries to which the deportation of a deportable alien may be effected, is found in 8 U.S. C.A. § 1253. The purpose of this Section was obviously to accord considerable leeway to the United States to carry out such an order. It is provided in Subsection (a) that the deportation shall be directed to a country promptly designated by the alien, if that country is willing to accept him into its territory, unless the Attorney General concludes that deportation to that country would be prejudicial to the interests of the United States. It is further provided that no alien shall be permitted to make more than one such designation. Acting under this provision, on June 29, 1955, Marcello designated France as the country to which he wished to be deported. On July 21, 1955, the Immigration and Naturalization Service received a formal refusal on the part of the Government of France to accept Marcello.

The Section further provides that if the government of the country designated by the alien refuses to accept him, then the deportation may be directed to any country of which the alien is a subject, national, or citizen, if that country is willing to accept him into its territory. Failing that, the Attorney General, in his discretion, is authorized to effect deportation to any one of a number of countries, without giving any priority or preference because of the order in which they are enumerated in the stat-

ute. Thus, the first paragraph permits deportation to the country from which the alien last entered the United States; another provision authorizes deportation to the country in which he was born. There are seven different choices, and the last and seventh option is to any country which is willing to accept the alien into its territory.

After France refused to accept the alien, our Government attempted to deport him to Italy, but the Italian Government, on August 9, 1955, withdrew permission that it had previously granted to Marcello for admission to Italy. There are some indications in the file that Marcello caused proceedings to be brought in the courts of Italy in order to secure a cancellation of his own permission to enter Italy.

Later there came into the possession of the United States a birth certificate tending to show that the plaintiff was born in Guatemala. Accordingly representations were made by officials of the United States to appropriate officials of Guatemala requesting the Government of Guatemala to accept the plaintiff if he were to be deported there. A document was then issued by the Guatemalan Government, the effect of which was to permit the plaintiff to enter that country. On April 4, 1961, the plaintiff was taken into custody by the Immigration and Naturalization Service in New Orleans and promptly deported by airplane to Guatemala, where he was permitted to land. It is claimed in behalf of the plaintiff in this action that he was not born in Guatemala, is not a citizen of Guatemala, and that, therefore, his deportation to that country was illegal.

■ At the outset, Government counsel contend that this action does not lie. It was held, however, in the case of Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868, that the validity of a deportation under the Immigration and Nationality Act of 1952, may be reviewed judicially under the Administrative Procedure Act, 5 U.S. C.A. § 1001 et seq. and that such review

may be had by an action for an injunction or for a declaratory judgment. It is argued that such an action lies only if it is brought while the alien is in this country; whereas, in this instance, it was instituted after the deportation had taken place and the alien was in Guatemala. The Court considers this distinction untenable. If the deportation were in fact and in law invalid, then the plaintiff would have the right to re-enter this country. Consequently, there is a justiciable controversy; there is a legal issue to be determined. Moreover, it would not do to say that the Government may deprive a person of a judicial remedy by taking prompt action and presenting the courts with a *fait accompli*. I do not think that the courts are as powerless as that.

■ The scope of review of a deportation order, however, is exceedingly narrow. Moreover, in this instance, it is not the original order of deportation that is presented for review. That order has already been reviewed and its validity sustained by the Supreme Court. What is presented for consideration is the question whether deportation to Guatemala was legal and valid under the deportation order.

The Government of this country, through its proper representatives, requested permission from the Government of Guatemala for Marcello to be received by that country. Such permission was granted, as evidenced by a Guatemalan document issued by its appropriate officials. On the basis of that document representatives of this Government brought the plaintiff to Guatemala, were permitted by the officials of the Guatemalan Government to land him there and leave him in that country. It is urged in behalf of the plaintiff, however, that subsequently to his arrival in that country the Guatemalan Government cancelled its prior permission and seeks to expel the plaintiff from its territory.

■ Counsel for the Government, present a formal communication, dated May 5, 1961, directed to the United States Attorney by Katherine W. Bracken, Director of the Office of Central American and Panamanian Affairs of the Department of State, in which it is certified that the Department of State has received no representations from the Government of Guatemala, either oral or in writing, which in any manner qualifies or changes its orginal acceptance of Carlos Marcello, also known as Calogero Minacore, also known as Calogers, into its territory as a deportee from the United States. A communication from the State Department such as this imports verity. The Court may not intrude into any negotiations between the Government of the United States and the government of a foreign country. The conduct of foreign relations is left solely to the President and his subordinates.[2]

■ It is contended that the birth certificate showing that the plaintiff was born in Guatemala is a forgery and it is urged that this assertion raises an issue of fact to be tried. The Court is of the opinion, however, that the issue of fact, if there is one, is not material. The Government of Guatemala has accepted the plaintiff, and once the acceptance was acted on and the plaintiff was brought by our Government to Guatemala and landed there, the transaction is at an end.

When this action was first brought there was an application for the convening of a three-judge court on the ground that a Constitutional question was raised, namely, that Paragraph (a) (7) of 8 U.S.C.A. § 1253, to which reference has been made, constituted cruel

2. United States v. Curtiss-Wright Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255; Whitney v. Robertson, 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386; George E. Warren Corp. v. United States, 2 Cir., 94 F.2d 597, 599, where the Court stated: " * * * matters concerning the relations between the two nations and their adjustment must be left to the field of diplomacy." Z. & F. Assets Realization Corp. v. Hull, 72 App.D.C. 234, 238, 114 F.2d 464; Latvian State Cargo & Passenger S.S. Line v. McGrath, 88 U.S.App.D.C. 226, 229, 188 F.2d 1000.

and unusual punishment, in violation of the Eighth Amendment to the Constitution. With some hesitancy, this Court granted the application for the convening of a three-judge court, being motivated particularly by the fact that the Court of Appeals for the Ninth Circuit recently held that such a question was a substantial question necessitating the convening of a three-judge court.[3] The three-judge court was convened, upheld the constitutionality of the statute, denied a motion for preliminary injunction, dissolved the three-judge court, and remitted the remainder of the issues to me as a single judge for disposition.

■ There is no doubt that deportation, harsh as it may be at times, is not punishment in the legal sense and, therefore, does not come within the purview of the Eighth Amendment.[4]

In the light of the foregoing discussion, the Court is of the opinion that there are no issues of fact here that are material and further concludes that the deportation has been in accordance with statute and is not tainted with any illegality.

Accordingly, the plaintiff's motion for a summary judgment will be denied and the defendants' motion for summary judgment granted.

Counsel will submit an appropriate order.

### On Motion to Vacate Summary Judgment

This is a motion under Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to vacate the summary judgment heretofore entered in favor of the defendants. All of the points raised in this motion have been fully argued and disposed of by the Court in connection with the original motion. Nothing new is advanced at this stage except a contention that Guatemala has recently expelled or deported the plaintiff. Apparently counsel for the plaintiff would contend that since Guatemala has deported or expelled the plaintiff it cannot be said to have originally accepted him as a deportee.

■ The Court does not agree. Once a foreign country informs this Government that it would accept a deportee from this country and he is actually permitted to land in that country pursuant to such acceptance, the matter is at an end so far as this country is concerned, as this Court indicated in its prior opinion. What the other country does thereafter does not affect the validity of the legality of the deportation. As was said by Judge Weinfeld in United States ex rel. Tie Sing Eng v. Murff, D.C., 165 F.Supp. 633, 634:

"The language of the statute is clear. It provides simply for deportation to a country 'willing to accept' the alien. It does not impose upon our Government, as a condition of deportation, an obligation to assure that once accepted the deportee will be granted permanent residence or asylum within the accepting country. Undoubtedly Congress could have required the Attorney General to secure assurances from an accepting country with respect to the continued residence of a deportee; but it has not done so."

This decision was affirmed by the Court of Appeals for the Second Circuit on the opinion of the District Court, United States ex rel. Tie Sing Eng v. Esperdy, 2 Cir., 266 F.2d 957.

A similar result was reached in the Northern District of Ohio in Glikas v. Tomlinson, D.C., 49 F.Supp. 104. In that case the Court held that the United States is not required to guarantee to every alien illegally in this country and subject to deportation an unconditional

---

3. Wolf v. Boyd, 9 Cir., 287 F.2d 520.

4. Fong Yue Ting v. United States, 149 U.S. 698, 730, 13 S.Ct. 1016, 37 L.Ed. 905; Bugajewitz v. Adams, 228 U.S. 585,

591, 33 S.Ct. 607, 57 L.Ed. 978; United States ex rel. Zapp v. District Director of Immigration, etc., 2 Cir., 120 F.2d 762, 764.

and permanent asylum in the country to which he was being sent.

The Court perceives no basis for changing the decision that it has heretofore rendered, and the motion is denied.