472 F.Supp. 1199 (1979)
UNITED STATES of America ex rel. Carlos MARCELLO
v.
DISTRICT DIRECTOR OF the IMMIGRATION & NATURALIZATION SERVICE, NEW ORLEANS, LOUISIANA.
Civ. A. No. 76-957.
United States District Court, E. D. Louisiana.
July 13, 1979.
Jack Wasserman, Wasserman, Orlow, Ginsburg & Rubin, Washington, D.C., Virgil M. Wheeler, Jr., New Orleans, La., for plaintiff.
John P. Volz, U. S. Atty., Eastern District of Louisiana, New Orleans, La., for defendant.

OPINION AND ORDER
JACK M. GORDON, District Judge.
This is a petition for Habeas Corpus review of a January 20, 1976, decision by the *1200 Board of Immigration Appeals ("Board"), denying to the petitioner, Carlos Marcello, relief from a 1961 order of deportation in the form of suspension of deportation. The Board denied relief for the reasons, first, that petitioner was statutorily ineligible for failure to show good moral character in the ten years preceding application, and second, that alternatively the Board would deny relief as a matter of discretion. Since petitioner is presently under an order of supervised parole pursuant to 8 U.S.C. § 1252(d), this Court has already held that he is "in custody" so as to entitle him to Habeas Corpus review of the Board's decision under 8 U.S.C. § 1105a(a)(9). See, Memorandum and Order dated June 11, 1976. In a subsequent hearing held January 3, 1979, after thorough briefing by counsel, this Court also held that the scope of review under 8 U.S.C. § 1105a(a)(9) was identical to that of direct review by the Court of Appeals in that both constitutional and nonconstitutional issues were reviewable, but that the review was limited to the administrative record, and therefore, there could be no evidentiary hearing before this Court.[1]
The merits of this appeal in Habeas Corpus were then briefed, and oral argument had, on April 25, 1979. At that time the Court orally stated to counsel for both parties, in open court, the tentative conclusions which it had reached regarding disposition of this matter. Those conclusions were reached after a thorough review of the record, as well as the many briefs filed by counsel. After informing the parties of its tentative conclusions, the Court invited counsel to file final briefs on the merits, addressing those conclusions which counsel might feel were in error, before the Court issued its written reasons for ruling. Final briefing occurred on May 18, 1979, and the matter was taken under submission.
After reviewing the comments of counsel on its tentative conclusions, the Court is not convinced that those conclusions were in error. Therefore, in accordance with the analysis presented orally on April 25, 1979, the Court now reduces its findings to writing.
Petitioner was originally ordered deported in 1953 as a result of a 1938 marijuana conviction. In 1961 the government succeeded in deporting petitioner to Guatemala, from which he subsequently reentered the United States without authority. A second deportation order was issued in 1961, based on the illegal reentry as well as the 1938 drug conviction. Petitioner's main contention is that the 1961 deportation was illegally carried out by the government, thus rendering the 1961 deportation order invalid. The Board failed to consider this argument in its decision of January 20, 1976. Petitioner contends that this was error because, had the Board voided the 1961 incident, petitioner could have been considered for suspension relief as one with permanent residence from 1910 (when he entered this country), rather than only from *1201 1961, and thus have been more likely to obtain relief. Although it appears that the Board's ultimate denial of relief to petitioner was based on the very long term record he sought to have them review, the peculiar facts surrounding the history of this case require thorough ventilation in order to prevent the Board's latest decision concerning petitioner from sweeping under the rug allegations of government misconduct of the worst sort.

HISTORY
Petitioner was born in Tunis, Africa, on February 6, 1910, of Italian parents. At the age of 8 months, on October 7, 1910, he was lawfully admitted to the United States for permanent residence. He is married to an American citizen, has four American-born children, as well as citizen grandchildren, brothers and sisters.
In 1953, petitioner was ordered deported under 8 U.S.C. § 1251(a)(11) as a native of Tunis, Africa, who had been convicted in 1938 of a marijuana violation under 26 U.S.C. § 2591. This deportation order was affirmed in Marcello v. Bonds, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1954). However, it was not executed until 1961.
In 1961, petitioner was deported to Guatemala on the basis of a Guatemalan birth certificate issued in the name of Calogers Minacore. Petitioner, Carlos Marcello, is also known as Calagore Minacore. Using this Guatemalan birth certificate, the Immigration Service obtained from the Guatemalan government an entry permit for petitioner on March 15, 1961. The permit described petitioner as a citizen of Guatemala. Petitioner alleges that with this document, the Immigration Commissioner deported him on April 4, 1961 in less than one hour after he reported to the District Director pursuant to the terms of his supervised parole. Just prior to actual departure, petitioner was served with a warrant of deportation and a written notice of the designation of Guatemala as his place of deportation. Petitioner also alleges that copies of these documents were never served on his attorney of record in the Immigration proceedings, Mr. Jack Wasserman. Petitioner reentered the United States in May, 1961, and on June 5, 1961, a second deportation proceeding was initiated which resulted in a second order of deportation based on illegal reentry into the United States, as well as on the 1938 drug conviction.
Petitioner does not contest that he is deportable on the 1938 marijuana conviction, or that in April, 1961, there existed a valid outstanding 1953 order of deportation to support actually deporting him. However, he does allege that the 1961 deportation was fatally defective for several reasons, and that therefore, there was no illegal reentry such as to support the 1961 order of deportation. Specifically, petitioner contends that first, the Guatemalan birth certificate was a forgery, and the United States government knew it was a forgery and a false document when the Immigration Service used it to obtain the entry permit from Guatemala; second, that the failure to give the required notice to both petitioner and his attorney violated both his right to due process and his right to counsel, as provided for in 8 U.S.C. § 1252(b). See, Mendez v. I.N.S., 563 F.2d 956 (9th Cir. 1977). Indeed, petitioner has been trying since 1961 to get either an administrative or a judicial determination of the validity of his 1961 deportation, as based on these arguments, but has been effectively thwarted at every turn by almost fifteen years of judicial and administrative "side-stepping" of the issue. The Court will now relate that history.
The day after petitioner was removed to Guatemala, his attorney filed suit on his behalf in the United States District Court for the District of Columbia, seeking a declaration that the deportation was illegal, and permission to reenter the United States. On cross-motions for summary judgment, the district court entered a judgment for the government and dismissed the complaint. The district court entered written reasons for the judgment which stated a finding that the deportation was legal. However, by the time the reasons were issued, petitioner had already reentered the *1202 United States, and a criminal prosecution for illegal reentry had begun. Therefore, on appeal, the District of Columbia Circuit reversed the district court, and vacated the judgment, ordering the complaint be dismissed for the reasons, first, that the request for permission to reenter was moot since petitioner was already back in the country, and second, that the declaration that the deportation was legal should never have been made by the district court, since that factual determination would be tried by a jury in the pending criminal proceeding. Marcello v. Kennedy, 114 U.S.App. D.C. 147, 312 F.2d 874 (1962), cert. den., 373 U.S. 933, 83 S.Ct. 1536, 10 L.Ed.2d 692.
Meanwhile, on July 11, 1961, petitioner was ordered deported on charges of illegal reentry, 8 U.S.C. 1182(a)(17), and marijuana violations, 8 U.S.C. § 1251(a)(11). Petitioner appealed that order to the Board of Immigration Appeals, seeking to have the order set aside and the case remanded, or that voluntary departure be granted. On December 20, 1961, the Board issued an opinion denying the requested relief for the following reasons.
First, the Board noted that the Special Inquiry Officer who had issued the 1961 deportation order, had refused to hear any evidence on the possible illegality of the deportation, stating that the district court decision in Marcello v. Kennedy (reported at 194 F.Supp. 750) was res judicata. The Board affirmed this ruling, not on the ground of res judicata, but under the principle of collateral estoppel.[2]
The district court had stated that ". . . the deportation has been in accordance with statute and is not tainted with any illegality." (194 F.Supp. at 753). Concluding that the same arguments for illegality were being raised in the appeal from the deportation order, the Board stated at p. A-5 of its decision:
. . . We hold that the Court's decision that the deportation was in accordance with the statute and was not tainted with any illegality must be taken as conclusively established in this proceeding so long as that judgment remains unmodified. . . . However, if the Court's decision should be reversed, the respondent may file a motion for reconsideration or reopening of this deportation proceeding. (emphasis supplied)
The Board then went on to deny relief in the form of voluntary departure because, due to the 1961 departure to Guatemala, petitioner could not establish continuous physical presence in the United States for ten years prior to his request and thus, was statutorily ineligible. See, p. A8 of the December 20, 1961, decision.[3]
Subsequent to the Board's 1961 decision, of course, Marcello v. Kennedy was reversed, and the judgment upon which the Board had relied for collateral estoppel was vacated. [114 U.S.App.D.C. 147, 312 F.2d 874 (1962), cert. den., 373 U.S. 933, 83 S.Ct. 1536, 10 L.Ed.2d 692 (1963)]. Pursuant to the Board's 1961 representations that it would entertain a motion to reconsider or reopen in this event, petitioner did so move in 1963. However, the criminal prosecution for illegal reentry was still ongoing at that time, so on October 22, 1963, the Board denied the motion to reopen ". . . solely on the ground that it is prematurely filed but without prejudice to later resubmission." At pp. B-2 and B-3 of that decision the Board acknowledged that the validity of the 1961 deportation order did not depend on the outcome of the criminal proceeding, but that the Board felt it might prejudice petitioner in his criminal defense if he were *1203 questioned in the deportation proceeding about his deportation and reentry. Such concern was not, however, felt by the petitioner.
The criminal indictment for illegal reentry which so concerned the Board was dismissed on April 28, 1965. On June 18, 1970, petitioner was reindicted, but that charge was also dismissed, on October 30, 1970. On December 9, 1970, petitioner again moved to reopen the deportation proceeding on the ground that the 1961 deportation was invalid. In that motion, he wished to be regarded as never having left the United States, so that he could apply for suspension of deportation under 8 U.S.C. § 1254(a)(2), which required ten years' continuous physical presence in the United States prior to application.
In ruling on this 1970 motion, the Board noted that in 1968 petitioner had been convicted under 18 U.S.C. § 111 for assaulting an F.B.I. agent. He had been sentenced to two years' imprisonment and a $5,000.00 fine, but that sentence was later reduced to six months in prison with two years' probation. At the time of the motion to reopen, petitioner was serving this reduced sentence. Counsel for petitioner represented to the Board that he expected petitioner to be released on March 12, 1971, after serving 148 days of his sentence. However, the Board noted that if for any reason petitioner was not released after 148 days, but was forced to serve his entire sentence, he would be statutorily ineligible for suspension of deportation under 8 U.S.C. §§ 1101(f)(7), 1254(a)(2), and 1254(e). See, Board decision of February 25, 1971. The Board then went on to state at p. C-3 of its decision that:
. . . Respondent desires to reopen proceedings so that he can prove he was illegally deported. Respondent is deportable under the 1953 order of deportation even if the 1961 deportation were invalid.
From here, the Board reasoned, also at p. C-3:
Thus, since respondent is deportable, either under the 1961 order or the 1953, it would be a useless act to reopen proceedings to permit him to apply for relief for which he has not yet established his eligibility. (referring to petitioner's prison term)
Therefore, the Board once again denied petitioner's motion to reopen ". . . solely on the ground that it was prematurely filed."
It is interesting to note that in the quoted language from the Board's February 25, 1971, decision, the Board expressed the opinion that were the petitioner's 1961 deportation proven invalid, then petitioner would be deportable, not under the alternative ground of the 1961 order, but rather under the 1953 order, presumably reinstated under 8 U.S.C. § 1252(f). This analysis appears to be correct to this Court as well. While the Government contends in the present proceeding that, were the 1961 deportation set aside, the 1961 order would remain on the basis of the marijuana charge, and while the petitioner contends herein that invalidating the 1961 deportation not only avoids the 1961 order in toto, but leaves no valid order outstanding, neither party has been able to supply the Court with any legal authority for either contention. Indeed, at the oral argument on April 25, 1979, counsel for both parties admitted that there is no law on this issue, and the Court has been unable to find any. However, the Court feels that the Board's analysis of February 25, 1971, is logically correct. If, in April, 1961, petitioner had been given sufficient notice to contest the deportation prior to actual physical removal, and if, assuming his allegations concerning the falsity of the Guatemalan birth certificate were correct, and his attack successful, then there would have been no physical removal, or deportation, and the 1953 order would have remained outstanding, valid, and enforceable.
The only arguable legal authority for the Government's proposition that the legality of the 1961 deportation need never be decided, either by the Board or by a court, is the 1971 per curiam decision by the Fifth Circuit in Marcello v. I.N.S., 449 F.2d 349. That decision dismissed as moot petitioner's appeal of the Board's February 25, 1971, *1204 denial of his motion to reopen. The Fifth Circuit noted that an assumption by the Board that the 1961 deportation was valid had prevented their finding the necessary ten years' continuous physical presence for suspension relief, but that the validity of the deportation was moot on appeal because, by the time the case had reached the Fifth Circuit, the ten years had passed, and relief could no longer be denied on that ground. See, 449 F.2d at 350.[4] What the Fifth Circuit did not note was that the Board's 1971 decision was not based so much on the ten years' physical presence requirement, but rather, on the potential effect of petitioner's prison term. In any event, on February 4, 1972, petitioner for the fourth time moved to reopen his deportation proceedings to contest the validity of his 1961 deportation. For the fourth time the Board refused to consider the issue, and denied petitioner suspension of deportation by decision of January 20, 1976. It is that decision which is presently before this Court on Habeas Corpus appeal.

DISCUSSION
As a result of the 1961 order of deportation, petitioner was placed on supervised parole under 8 U.S.C. § 1252(d) in 1962. That order of supervision constitutes the custody from which derives petitioner's right to Habeas Corpus review. 8 U.S.C. § 1105a(a)(9); Developments in the Law: Federal Habeas Corpus, 83 Har.L.Rev. 1038, 1238 (1970).
On February 4, 1972, the Board granted petitioner's motion to reopen solely for the purpose of allowing him to apply for suspension of deportation. The Board's prior concern in 1971, i.e., that petitioner might be found statutorily ineligible for such relief as a result of his prison term, proved unfounded, as petitioner only served 150 days of his 1968 sentence and 180 days were required under § 101(f)(7) of the Immigration Act to bar suspension. By 1972, petitioner had also met the ten years' continuous presence requirement, and the 1961 deportation was no longer germane to that issue. However, the Board still refused to consider the validity of that deportation for any reason.
Petitioner contended that by having the 1961 deportation and alleged illegal reentry on his record, first, it would be an adverse factor bearing on the exercise of any discretion by the Board in his favor, and second, an alien with uninterrupted physical presence since 1910 would be in a much better position to obtain suspension of deportation than one with physical presence only since 1961. The Board maintained, however, that such alleged relevancy did not exist because ". . . Our present decision is in no way based on either the manner of respondent's 1961 entry or the fact that his continuous physical presence since 1910 was interrupted for about a month in 1961."
The Board then went on to find that petitioner was statutorily ineligible for suspension of deportation because he failed to meet the required showing of good moral character. In so finding, the Board cited the 1938 marijuana conviction, as well as a 1930 assault and robbery conviction for which petitioner actually served four years in prison, but for which he was pardoned in 1935. The Board also cited petitioner's receipt of income from gambling between 1945 and 1951. The Immigration Act, however, requires only a showing of good moral character for "at least ten years preceding application." In that regard, the Board felt that petitioner's having served 150 days in prison for his 1968 assault was so perilously close to the statutory bar of 180 days as to negate a finding of good moral character even within the preceding ten years. Therefore, the Board specifically did not address the third requirement for suspension, i. e., that petitioner show exceptional or extremely unusual hardship, either to *1205 himself or to citizen family members, if he were to be deported. In the alternative, the Board denied suspension relief as a matter of discretion. Thus, the two issues before the Court are, first, whether petitioner has shown the requisite good moral character, and second, whether the Board abused its discretion in denying relief.[5]
Petitioner contends: first, that the Board erred by once again refusing to consider the validity of the 1961 deportation; second, that he was effectively denied his right to oral argument under 8 C.F.R. 3.1(e) since two members of the three-man majority in the 1976 decision did not hear the oral argument; third, that the Board erred in finding statutory ineligibility by relying on stale and pardoned convictions, as well as the 1968 sentence, contrary to the Board's own guidelines; and, fourth, that the Board erred in denying relief as a matter of discretion when the record did not contain substantial evidence to support such a denial.
With respect to petitioner's first contention, the Court feels that the validity of petitioner's 1961 deportation is a crucial issue in this appeal, and one which should not be cleverly avoided by yet another court. The allegations which petitioner is making about the integrity of the United States government and its Immigration Service raise serious ethical issues which should not even appear to be the beneficiaries of a judicial or administrative "cover-up." Furthermore, to so avoid the issue allows the possibility that "bad cases make bad law," and that this case might some day be used to violate the rights of one not so notorious a public figure as petitioner.
Petitioner has submitted to this Court various documents which tend effectively to show that a false Guatemalan birth certificate was knowingly used by the Immigration Service to fraudulently obtain a permit of entry for petitioner from the Guatemalan government. For the Government to argue here in brief that petitioner has no standing to complain of this activity because it was Guatemala which was defrauded, and not petitioner, is callous disregard for ethical standards of the worst sort. Furthermore, if petitioner can prove that neither he nor his counsel were given the appropriate notice of deportation, but that he was, instead, literally kidnapped and removed from the United States without due process and without his right to counsel, then the case would fall squarely within the holding of Mendez v. I.N.S., 563 F.2d 956 (9th Cir. 1977).
In Mendez, the alien was a native of Mexico who was ordered deported under 8 U.S.C. § 1251(a)(4) for conviction of burglary. Mendez was summoned to appear for deportation on May 15, 1975, and was deported the same day, without notice to his counsel and without any opportunity to contact his counsel. On July 28, 1975, his attorney filed a motion to reconsider and for permission to reenter on the ground that prior to the deportation, Mendez' conviction for burglary had been vacated. The motion was denied for lack of jurisdiction. Mendez appealed, contending that the failure to notify his attorney of the order to report for deportation, as required by published regulations, had deprived him of his right to judicial appeal and to administrative procedures which could have resulted in the vacating of his order of deportation. The Government challenged the jurisdiction of the Ninth Circuit to entertain Mendez' appeal by citing 8 U.S.C. § 1105a(c) which provides that an alien cannot challenge an order of deportation if he has departed from the United States after the issuance of the order.
The Ninth Circuit rejected the Government's position, holding that "departed" under 8 U.S.C. § 1105a(c) meant "legally departed," *1206 and that the illegal removal of an alien from this country cannot be used as a bar to review of the order under which he was removed. The court further held, at 563 F.2d 959:
Here, failure to notify appellant's counsel amounts not only to a violation of 8 C.F.R. 292.5(a), but also of appellant's right to counsel as provided in 8 U.S.C. 1252(b). We order the [I.N.S.] to admit appellant into the United States, granting appellant the same status he held prior to the May 15, 1975 deportation. This will permit appellant to pursue any administrative and judicial remedies to which he is lawfully entitled.
In Mendez, the failure of I.N.S. to notify counsel prevented Mendez from contesting the order of deportation on the ground that his burglary conviction had been vacated. In the present case, the failure to notify petitioner's counsel of the proposed removal prevented petitioner from stopping the removal by showing the Guatemalan birth certificate to be false. In Mendez, the alien at least knew he was reporting for deportation on May 15, 1975. Here, however, petitioner was merely making a routine report under the terms of his parole when he was served with a deportation notice and whisked away. Furthermore, the hint of Government fraud in the present case exacerbates the violation of petitioner's rights which resulted in his being counter-deported from Guatemala (See, Marcello v. Kennedy, supra, at 194 F.Supp. 752), and subjected to two criminal prosecutions for illegal reentry. Just as the Mendez court held that the illegal removal of an alien cannot bar review of his deportation order, the allegedly illegal removal of petitioner should never have been allowed to constitute the basis for a finding of statutory ineligibility for suspension of deportation without a thorough ventilation of the facts surrounding that removal. To blithely state that the issue becomes moot because, by using it, ten years of petitioner's life eventually pass, is to ignore the fact that if indeed his rights have been violated, that violation has caused him to be subject to two criminal prosecutions he would not otherwise have been exposed to. If petitioner's rights have been violated as he alleges, then under Mendez he is entitled to have his day in court on this issue.[6]
Insofar as Mendez may relate to the precise issue of whether or not the Board erred in its finding of a lack of good moral character, the Court is of the opinion that, although the Board stated that it was not going to consider the 1961 departure in assessing petitioner's request for relief, it is difficult if not impossible for this Court to perceive how a decision on that issue could not be affected in large measure by a thorough exposition of the details surrounding petitioner's removal from the United States. The Board itself, in its earlier decisions, indicated to petitioner that the issue would one day be decided, and that should the 1961 order fall, the 1953 order would prevail.
Furthermore, in making the determination that petitioner lacked good moral character, this case bears a striking resemblance to that of Rassano v. I.N.S., 492 F.2d 220 (7th Cir. 1974). In Rassano the Seventh Circuit reversed a denial of discretionary relief based on stale convictions and rumors of underground criminal connections. The *1207 factual details of Rassano are startlingly similar to the instant case, where petitioner has been the subject of many such rumors in the New Orleans area alone. The appearance that this case has not been decided on the basis of factors usually relied on by the Board (see, dissent filed January 20, 1976), but rather on rumor and innuendo, can only be dispelled, in this Court's mind, by a remand for additional fact-finding and a determination of the validity of petitioner's 1961 deportation, with an express statement by the Board as to its assessment of the numerous character affidavits on behalf of petitioner, which affidavits were submitted to the Board, but not commented on by them.

CONCLUSION
For the foregoing reasons, the Court finds that the Board committed error in its finding that petitioner lacked the requisite good moral character for a suspension of deportation under § 244(a)(2) of the Immigration Act, and that it abused its discretion in denying the requested relief.[7] The Court therefore ORDERS that judgment be entered VACATING the decision of the Board of Immigration Appeals dated January 20, 1976, regarding Carlos Marcello, and REMANDING this cause to the Board of Immigration Appeals with instructions to conduct a hearing on the validity of petitioner's 1961 deportation, and to further reevaluate and supplement its decision on the issues before it in accordance with this opinion.
NOTES
[1] Voluminous briefs had been filed by both the petitioner and by the government prior to oral argument on January 3, 1979. The government's main contention was that Habeas Corpus review, if allowable at all under 8 U.S.C. § 1105a, was limited to review of constitutional issues. Petitioner contended that Habeas Corpus review entitled him to an evidentiary hearing, with additional fact-finding by this Court.

In reaching its conclusions of January 3, 1979, the Court relied on the following authorities: First, the legislative history of 8 U.S.C. § 1105a, including § 1105a(a)(9), found at 1961 U.S.Code Cong. & Admin.News, pp. 2950, 2966-2977. Second, Developments in the Law: Federal Habeas Corpus, 83 Har.L.Rev. 1038, at 1240-1248 (1970). And finally, the combined effect of the following cases, construing or implementing the 1961 amendments to the Immigration and Naturalization Act, Foti v. Immigration & Naturalization Service, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963); U. S. v. Pereira, 574 F.2d 103 (2d Cir. 1978); U. S. ex rel. Barbour v. I.N.S., 491 F.2d 573 (5th Cir. 1974), cert. den. 419 U.S. 873, 95 S.Ct. 135; Aalund v. Marshall, 461 F.2d 710 (5th Cir. 1972), aff'ing 323 F.Supp. 1380; U. S. v. Gonzales-Parra, 438 F.2d 694 (5th Cir. 1971); Pilapil v. I.N.S., 424 F.2d 6 (10th Cir. 1970), cert. den. 400 U.S. 908, 91 S.Ct. 152) Gagliano v. I.N.S., 353 F.2d 922 (2d Cir. 1965); Russo v. U. S. Immigration Commissioner, 342 F.2d 42 (5th Cir. 1965); U. S. ex rel. Parco v. Morris, 426 F.Supp. 976 (E.D.Pa. 1977); Hon Keung Kung v. District Director I.N.S., 356 F.Supp. 571 (E.D.Mo.1973); U. S. ex rel. Ling Shing v. Esperdy, 305 F.Supp. 1106 (S.D.N.Y.1969); Application of Argyros, 245 F.Supp. 190 (S.D.N.Y.1965).
[2] The Board stated at p. A-4 of its decision:

. . . Hence, the question of whether the respondent is precluded from offering evidence to show that the deportation to Guatemala was illegal depends on the doctrine of collateral estoppel by judgment and not on the doctrine of res judicata.
[3] It is important to note that at p. A-5 of that decision, the Board also stated that even if the 1961 deportation were ultimately proved invalid, petitioner was still deportable on the 1938 marijuana conviction. Petitioner does not contest this analysis, but points out that if the deportation had been held invalid at that time, he would have been statutorily eligible for relief.
[4] The government argues at p. 2 of its May 9, 1979, brief that this decision means that the issue of the validity of the 1961 deportation order is moot insofar as it relates to any aspect of an application for suspension of deportation. A reading of the one-page decision clearly reveals the holding to be very narrow, i. e., that the issue is moot only with respect to petitioner's ability to meet the requirement of ten years' physical presence.
[5] At p. 5 of the government's May 9, 1979, brief, it is argued that the Court has incorrectly assessed the two issues before it. This is so says the government because the Board also found petitioner statutorily ineligible for failure to show undue hardship. However, at pp. 5-6 of the January 20, 1976, opinion the Board states:

In light of our finding that the respondent lacks the requisite good moral character, we need not determine whether the respondent has met the hardship requirement.
[6] The issue of the validity, or illegality, of the 1961 deportation will not remain "moot" much longer. At the hearing on April 25, 1979, the Court stated to counsel that were petitioner to move the Board to reopen deportation proceedings to apply for a waiver of his drug conviction under 8 U.S.C. § 1182(c), as interpreted in Francis v. I.N.S., 532 F.2d 268 (2d Cir. 1976), and employed by the Board in Matter of Silva, Interim Decision 2532 (BIA 1976), then a final determination of this issue would be virtually inescapable for the Board. Contrary to the Government's apparent misunderstanding of the Court's April 25, 1979, remarks, the Court expressed an inclination, in order to avoid further delay, not to order the Board to entertain a motion for Francis relief, but to order petitioner to file such a motion contemporaneously with disposition of the present matter. Since the Court has received a copy of a letter of May 7, 1979, from petitioner's counsel to the District Director of the Immigration and Naturalization Service, including an application for Francis relief, the contemplated order is now unnecessary.
[7] In briefing oral argument for April 25, 1979, petitioner additionally contended that he had been denied oral argument under 8 C.F.R. 3.1(b), in that two members of the majority in the decision of January 20, 1976, were not present for the oral argument.

In Au Yi Lau v. I.N.S., 181 U.S.App.D.C. 99, 555 F.2d 1036 (1977), the court held that where four out of five participants in a Board decision had not been present for oral argument it was not reversible error since the Chairman of the Board had submitted an affidavit to the effect that the members who decided the case had had access to a transcript of the oral argument. At the April 25, 1979, hearing, counsel for the Government supplied the Court with the necessary affidavit for the January 20, 1976, decision presently on appeal, and therefore, under Au Yi Lau, ibid, this contention of petitioner is without merit.