**Arturo Ascencio MENDEZ, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

Nos. 75–3285, 76–1299.

United States Court of Appeals, Ninth Circuit.

Oct. 25, 1977.

Peter A. Schey, Legal Aid Soc. of San Diego, San Diego, Cal., argued for petitioner.

Rex L. Young, Atty., Crim. Div., U. S. Dept. of Justice, Washington, D. C., argued for respondent.

Before TRASK and WALLACE, Circuit Judges, and KING,* District Judge.

TRASK, Circuit Judge:

Appellant is a citizen and native of Mexico. He entered the United States in 1971 as a permanent resident alien. In August 1974, appellant was convicted of burglary and sentenced to one year in prison. As a result of this conviction, an order to show cause was issued by appellee. On February 6, 1975, appellant was found deportable pursuant to 8 U.S.C. § 1251(a)(4), conviction of a crime involving moral turpitude, with a sentence of one year. The Board of Immigration Appeals dismissed his appeal on April 15, 1975.

On April 29, 1975, the Superior Court in which appellant had been convicted issued an order vacating his sentence and reimposing a nine-month sentence. On May 8, 1975, without notice to appellant's counsel of record, appellee mailed to appellant a notice to appear for deportation on May 15. Appellant reported to the Immigration and Naturalization Service on May 15, explained that the underlying conviction had been vacated, and, without opportunity to contact counsel, was deported the same day. It is not disputed that appellant's attorney had no notice, actual or constructive, of his client's departure until after the deportation.

On July 28, 1975, appellant's attorney filed a motion for reconsideration with the Board of Immigration Appeals, on the basis of the vacated criminal sentence. The motion was denied for lack of jurisdiction. A

---

* Honorable Samuel P. King, United States District Judge, for the District of Hawaii, sitting by designation.

petition for review of the original deportation order was filed with this court on October 16, 1975, and a petition for review of the order denying reconsideration was filed on February 10, 1976. These two petitions were consolidated and form this appeal. Appellant claims that failure to notify his attorney of the order to report for deportation, as required by published regulations, deprived him of his right to judicial appeal and to administrative procedures which could have resulted in the vacating of his order of deportation.

At the outset appellee challenges this court's jurisdiction to entertain this appeal. Jurisdiction to review is based on 8 U.S.C. § 1105a, which states in part:

"(c) An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order."

Appellee argues that it makes no difference with regard to the jurisdiction of this court whether the alien's departure was voluntary or not because the Immigration and Nationality Act expressly provides that:

"For the purposes of this Act any alien ordered deported (whether before or after the enactment of this Act) who has left the United States, shall be considered to have been deported in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed." 8 U.S.C. § 1101(g).

We have difficulty viewing appellant as falling within the statutory definitions of one who "has departed the United States" or who has "been deported in pursuance of law."

We have found no case precisely on the issue of the court's jurisdiction to review an appeal when the alien was "wrongfully" deported, or, more precisely, when deportation was effected by procedurally defective means.[1] However, in *Espinoza Ojeda v. INS*, 419 F.2d 183 (9th Cir. 1969), a case in which the alien was deported on December 30, 1968, the day that his judicial appeal was filed, this court found no barrier to review. While there is no discussion on the jurisdiction of the court, a footnote indicates that a motion to dismiss for lack of jurisdiction had been denied. *Id.* at 184.

We are of the opinion that "departure" in the context of 8 U.S.C. § 1105a cannot mean "departure in contravention of procedural due process." We hold that "departure" means "legally executed" departure when effected by the government. We base our holding on the Supreme Court's decision in *Delgadillo v. Carmichael*, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17 (1947). In that case the Court held that an alien does not make an "entry" into the United States when he had no intent to "depart," or left involuntarily.

"[T]he exigencies of war, not his voluntary act, put him on foreign soil. It would indeed be harsh to read the statute so as to add the peril of deportation to such perils of the sea. We might as well hold that if he had been kidnapped and taken to Cuba, he made a statutory 'entry' on his voluntary return. Respect for law does not thrive on captious interpretations." *Id.* at 391, 68 S.Ct. at 12 (footnote omitted).

Appellee's contention that its decisions are immune from judicial review when the alien is physically out of the country—with-

1. There is no doubt that appellee's failure to notify appellant's counsel of the order to report was procedurally irregular. Such notice is required by 8 C.F.R. § 292.5(a), and "failure to adhere to such [published] regulations may deny due process of law." (*See* 2 Gordon & Rosenfield, *Immigration Law & Procedure* § 8.12b, at 8–84 (Rev. ed. 1976), and cases cited therein). In the instant case, notice to counsel would have allowed an opportunity to forestall deportation until the motion for reconsideration was properly filed. Appellant's right to counsel, his right to petition for reconsideration on the basis of new facts, and his right to judicial review and procedural due process became meaningless when he was deported without notice to his counsel.

out regard to the manner in which this "departure" was accomplished—is just such a "captious interpretation." Appellee's argument would serve to thwart the jurisdiction of this court in a case where the alien had been "kidnapped" and removed as easily as it would apply to this case involving deportation in derogation of procedural due process.

Appellee would have us believe that its own disregard for the law in effecting appellant's removal from the United States is somehow cured by 8 U.S.C. § 1101(g). The legislative history of section 1101(g) indicates that its purpose was to make clear that an alien who had been ordered deported, and who then departed the United States at his own expense, as opposed to the expense of the government, had in fact been deported and had not avoided the possible future collateral consequences of deportation. *See Mrvica v. Esperdy*, 376 U.S. 560, 564, 84 S.Ct. 833, 11 L.Ed.2d 911 (1964). In light of this legislative history, we interpret the phrase "who has left the United States," found in section 1101(g), so as to exclude illegally executed departures effected by the government.

Nor is it necessary to invoke constitutional grounds in order to dispose of this appeal. Courts have looked with disfavor upon actions taken by federal agencies which have violated their own regulations. In *Yellin v. United States*, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963), it was discovered by the petitioner in a contempt of congress case that the congressional hearing committee had pursued a course at variance with its own rules. Foregoing the constitutional issues raised the Court pointed out that the Committee had acted in violation of its own procedures. The decision of the Committee was reversed, the Court saying:

"Yellin should be permitted the same opportunity for judicial review when he discovers at trial that his rights have been violated. This is especially so when the Committee's practice leads witnesses to misplace reliance upon its rules. When

reading a copy of the Committee's rules, which must be distributed to every witness under Rule XVII, the witness' reasonable expectation is that the Committee actually does what it purports to do, adhere to its own rules. To foreclose a defense based upon those rules, simply because the witness was deceived by the Committee's appearance of regularity, is not fair. The Committee prepared the groundwork for prosecution in Yellin's case meticulously. It is not too exacting to require that the Committee be equally meticulous in obeying its own rules." *Id.* at 123–24, 83 S.Ct. at 1837.

*See also Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976).

In *Bates v. Sponberg, supra*, the court said at page 330:

"While courts have generally invalidated adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard, we conclude that the basis for such reversals is not, as Bates asserts, the Due Process Clause, but rather a rule of administrative law. A review of the cases relied upon by the district judge fails to persuade us to the contrary. Agency actions in *Yellin v. United States, supra*, and *Accardi v. Shaughnessy, supra*, were reversed for violations of their own regulations, but the court did not rely on the Due Process Clause." (Footnotes omitted).

Here, failure to notify appellant's counsel amounts not only to a violation of 8 C.F.R. 292.5(a), but also to appellant's right to counsel as provided in 8 U.S.C. § 1252(b). We order the Immigration and Naturalization Service to admit appellant into the United States, granting appellant the same status he held prior to the May 15, 1975, deportation. This will permit appellant to pursue any administrative and judicial remedies to which he is lawfully entitled.

It is so ORDERED.