Lucas P. BAEZ, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 94–1224.

United States Court of Appeals, First Circuit.

Heard Nov. 8, 1994.

Decided Dec. 6, 1994.

Paul F. Murphy, with whom MacDonald, Murphy & May, Cambridge, MA, was on brief, for petitioner.

Joan E. Smiley, Attorney, Office of Immigration Litigation, Civ. Div., Dept. of Justice, with whom Frank W. Hunger, Asst. Atty. Gen., Civ. Div., and Lauri Steven Filppu, Attorney, Office of Immigration Litigation, Washington, DC, were on brief, for respondent.

Before SELYA, CYR and STAHL, Circuit Judges.

SELYA, Circuit Judge.

Petitioner Lucas P. Baez, also known as Lucas Porfirio Baez–Soto, also known as Domingo Guzman, an alien who was deported following a state narcotics conviction, attempts to challenge the refusal of the Board of Immigration Appeals (BIA or Board) to reopen its decision to deny him a waiver of deportability. Petitioner's case requires this court to make its initial interpretation of the jurisdictional bar contained in the departure clause of section 106(c) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1105a(c) (1988).[1] The courts of appeals have divided on whether this statute signifies what it appears to say. We conclude that the statute's plain meaning must prevail, and, therefore, an alien's departure from the United States, whether voluntary or involuntary, deprives the federal courts of jurisdiction to entertain challenges to an antecedent order of deportation. Because the instant petition solicits judicial inquiry into the correctness of the deportation order that brought about petitioner's departure, we dismiss it for want of appellate jurisdiction.

## I. BACKGROUND

■ Petitioner is a native and citizen of the Dominican Republic. He lawfully entered the United States as a child in 1972. In 1986, he was convicted in a Massachusetts state court of distributing cocaine, and received a five-to-ten-year incarcerative sentence. An alien's commission of a serious drug offense invites deportation. *See* 8 U.S.C. § 1251(a)(11) (1988); *see also* 8 U.S.C.A. § 1251(a)(2)(B)(i) (West Supp.1994) (current version). Adhering to the statutory scheme, the Immigration and Naturalization Service (INS) issued an order asking petitioner to show cause why he should not be deported.

Following petitioner's release from prison in 1988, an immigration judge (IJ) held a hearing on the show-cause order. Under section 212(c) of the Act, 8 U.S.C. § 1182(c), a lawfully admitted resident alien domiciled in this country for no fewer than seven years who has been convicted of a drug offense may secure relief from deportation on the basis of that conviction if the Attorney General determines that a waiver appears to be in the national interest because social and humane considerations outweigh the adverse factors evidencing the alien's undesirability.[2] *See Gouveia v. INS,* 980 F.2d 814, 816–19 (1st Cir.1992) (elucidating balancing test); *Matter of Marin,* 16 I. & N.Dec. 581 (BIA 1978) (similar). During the hearing, petitioner conceded deportability, invoked section 212(c), and requested a discretionary waiver. On June 16, 1989, the IJ issued a decision favorable to petitioner. The judge noted adverse factors, including petitioner's cocaine conviction and neglect of his children, but found those factors overbalanced by petitioner's extended residence, family ties, and the like.

The INS appealed the IJ's decision to the BIA. Under the briefing order applicable to its appeal, the INS had until August 23, 1990, to file its brief, but the matter apparently fell between the cracks. On August 28, petitioner filed a motion to dismiss the appeal with the IJ. The INS responded by serving the wayward brief the next day and, shortly thereafter, submitting its formal opposition to the dismissal motion. In early September, petitioner, apparently realizing belatedly that

---

1. The statute provides in material part that "[a]n order of deportation ... shall not be reviewed by any court if the alien ... has departed from the United States after the issuance of the order." 8 U.S.C. § 1105a(c) (1988).

2. The Attorney General has duly delegated this power to her subordinates within the INS appa-

ratus, with the proviso that applications "for the exercise of discretion under section 212(c) of the Act shall be submitted ... to: (1) the [appropriate regional] director ...; or (2) the Office of the Immigration Judge...." 8 C.F.R. § 212.3(a) (1994).

his motion should have been filed with the BIA rather than the IJ, refiled it with the BIA. After an unexplained three-year lull, the BIA issued an order on September 30, 1993, in which it reversed the IJ's decision, denied petitioner's request for a waiver, and ordered him deported.

On November 22, 1993, at 11:15 p.m., Paul F. Murphy, counsel of record for the petitioner, received a telephone call from petitioner's sister informing him that the INS had taken petitioner into custody that day and intended to deport him posthaste. Attorney Murphy claims that, as of that moment, he did not know of the Board's September 30 decision. The next day, the lawyer moved to stay deportation and reopen the proceedings. He filed these motions at the IJ's chambers in Boston. Early that afternoon, the motions were forwarded to the BIA's office in Falls Church, Virginia. At 2:00 p.m., Attorney Murphy telephoned the BIA and supplied an oral statement in order to facilitate immediate review of the motion to stay deportation. At 4:30 p.m., the BIA notified Attorney Murphy that it had denied the stay because the single member who considered the matter found that the motion to reopen had little likelihood of success.[3]

The INS deported petitioner on November 24, 1993. On December 13, in pursuance of the applicable regulation, 8 C.F.R. § 3.2 (1994), the BIA effectively denied petitioner's motion to reopen, deeming it to be withdrawn by virtue of his deportation. On March 10, 1994, petitioner sought judicial

review of the "denial" of his motion to reopen. See 8 U.S.C.A. § 1105a (West 1970 & Supp.1994) (prescribing the procedure for review of final deportation orders in the courts of appeals); see also Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam) (holding that the BIA's denial of a motion to reopen a deportation proceeding is a judicially reviewable final order). The petition appears to have been filed within the time span fixed by statute.[4]

## II. THE PROFFERS ON APPEAL

An INS regulation provides in pertinent part that "[t]he decision of the [BIA] shall be in writing ... and a copy shall be served upon the alien or party affected as provided in part 292 of this chapter." 8 C.F.R. § 3.1(f) (1994). The cross-referenced regulation stipulates that service may be effected by mail upon "the attorney or representative of record, or the person himself if unrepresented." 8 C.F.R. § 292.5(a) (1994). At all times material hereto, Murphy was petitioner's attorney of record. He claims not to have received timeous notice of the BIA's September 30 decision. Desiring to shed light on this factual issue, we authorized the parties to submit fact-specific proffers anent the notification issue. See Bemis v. United States, 30 F.3d 220, 222 & n. 2 (1st Cir.1994) (authorizing factual proffers on appeal).

Petitioner submitted an affidavit signed by Attorney Murphy's secretary, Montsie Moreno, stating that she sorted the lawyer's mail

---

**3.** Petitioner did not seek judicial review of the BIA's order within the time then allotted by statute, see 8 U.S.C.A. § 1105a(a)(1) (West Supp. 1994) (providing that petitions for judicial review of such orders must be filed within 90 days); see also infra note 4, despite the fact that the time for doing so had not yet expired. By the same token, petitioner did not seek a stay from this court.

**4.** In 1990, Congress amended 8 U.S.C. § 1105a(a)(1) to reduce to 30 days the period within which an alien convicted of certain aggravated felonies on or after November 18, 1988 might petition for judicial review. See Immigration Act of 1990, Pub.L. No. 101–649 § 502(a), 104 Stat. 4978 (1990). Because petitioner's conviction occurred in 1986, he had 90 days, rather than 30, within which to file his petition in this court, see id. at § 545(b)(1).

INS nevertheless argues that, because the petition to review was not filed within 90 days of the date of the deportation order (September 30, 1993), this court lacks jurisdiction to review that decision. INS's view is problematic. Compare Fleary v. INS, 950 F.2d 711, 713 (11th Cir.1992) (reaching opposite conclusion after considering 1990 amendments to the Act) and Fuentes v. INS, 746 F.2d 94, 97 (1st Cir.1984) (similar; considering earlier version of the Act) with Stone v. INS, 13 F.3d 934, 936–39 (6th Cir.1994) (contra; considering 1990 amendments) and Nocon v. INS, 789 F.2d 1028, 1032–33 (3d Cir.1986) (same; considering earlier version of the Act). We need not probe this point, for even if INS is correct in its view—a matter on which we do not pass—it has not argued that the petition for review is untimely as to the Board's jettisoning of the motion to reopen.

during October of 1993, but did not receive a copy of the BIA's decision in that time frame. For its part, the INS submitted two sworn declarations. The declaration of April M. Verner, supervisory case management analyst of the BIA's Docket Unit, certified, based on her knowledge of BIA procedure and the record of the case, that a copy of the BIA's September 30, 1993 decision had been mailed contemporaneously to Attorney Murphy at 6 Faneuil Hall Marketplace, Boston, MA 02109 (which was counsel's address of record as indicated on BIA Form EOIR–27, dated September 7, 1990).

The second declaration dovetails with Verner's statement but goes on to strike a somewhat different chord. In it, Judith E. Arnott, the Boston-based INS officer who made the arrangements for petitioner's deportation, observed that a copy of Form I–294 (the official notice of the country to which a particular individual's deportation is directed) had been mailed to Attorney Murphy at his address of record shortly after petitioner's deportation, and that the mailing was returned to the INS on December 7, 1993, marked "forwarding time expired." Ms. Arnott added that neither petitioner nor his representative, Attorney Murphy, ever requested the district director to stay petitioner's deportation.

The parties filed no further proffers. At oral argument, however, Attorney Murphy advised that he continued to maintain an office at 6 Faneuil Hall Marketplace and implied that he had never arranged to have mail forwarded from that address. Nevertheless, he conceded that, in the fall of 1993, his principal offices were located elsewhere, and the Faneuil Hall office was checked for mail at infrequent intervals (perhaps twice a week).

## III. ISSUES PRESENTED

Petitioner contends that several errors infected the process leading to his deportation. First, he asseverates that the INS's failure punctually to file its brief deprived the BIA of jurisdiction to hear the initial appeal, and, consequently, that the IJ's decision upholding petitioner's entitlement to a section 212(c) waiver became final agency action (or,

put another way, that the BIA's reversal of the IJ's ruling had no force or effect because the BIA's jurisdiction had been pretermitted). Second, petitioner asseverates that, in violation of applicable statutory and administrative rules, the BIA did not properly notify his counsel of its September 30 decision and, therefore, deported petitioner without requisite notice. *See, e.g.,* 8 C.F.R. § 243.3(b) (1994) (providing that a deportation order "shall be executed no sooner than 72 hours after service of the decision").

We are powerless to reach the merits of these asseverations, however, for petitioner's deportation deprives this court of subject matter jurisdiction over the request for judicial review.

## IV. ANALYSIS

■ Section 106(c) of the Act, 8 U.S.C. § 1105a(c), quoted *supra* note 1, is absolute on its face. It stipulates that a deportation order "shall not be reviewed by any court" once the alien has departed. This flat rule is couched in obligatory terms that reflect Congress's determination to eliminate repetitive and unjustified appeals. *See* H.R.Rep. No. 1086, 87th Cong., 1st Sess. (1961), *reprinted in* 1961 U.S.C.C.A.N. 2950, 2971–72.

Despite the unambiguous language of the statute, some courts, presumably troubled by its rigidity, have read exceptions into it, thereby softening its impact and authorizing post-deportation judicial review under certain circumstances. The Ninth Circuit pioneered this view in *Mendez v. INS*, 563 F.2d 956 (9th Cir.1977). There, an alien who had been deported without notice to his counsel, on the basis of a sentence that had been vacated prior to deportation, pressed forward with a petition for judicial review of the deportation order. The court entertained the petition and ordered the alien readmitted to the United States. *See id.* at 959. In reaching this result, the court read section 1105a(c) as a conditional, rather than an absolute, bar, opining that " 'departure' in the context of 8 U.S.C. § 1105a cannot mean 'departure in contravention of procedural due process.' " *Id.* at 958. On this basis, the court held that " 'departure' means 'legally

executed' departure when effected by the government." *Id.*

Since the first seed was sown, the *Mendez* exception has mushroomed in the Ninth Circuit. Today, that court allows judicial review of deported aliens' claims in an array of situations. *See, e.g., Zepeda–Melendez v. INS,* 741 F.2d 285, 287–88 (9th Cir.1984) (entertaining petition on claim that deportation occurred without notice to counsel); *Thorsteinsson v. INS,* 724 F.2d 1365, 1367–68 (9th Cir.) (indicating that court would entertain petition on claim that deportation occurred through ineffective assistance of counsel), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2386, 81 L.Ed.2d 345 (1984); *Estrada–Rosales v. INS,* 645 F.2d 819, 820–21 (9th Cir.1981) (entertaining petition on claim that deportation was based on invalid conviction).

*Mendez* has not fared as well outside its birthplace. To the limited extent that the decision has evoked admiration, its admirers have doused it with faint praise. A decade ago, the Sixth Circuit referred to the *Mendez* exception in approbatory terms, but did not squarely adopt it, *see Juarez v. INS,* 732 F.2d 58, 59–60 (6th Cir.1984) (citing *Mendez* in connection with a discussion of an alien's administrative remedies), and to our knowledge has not revisited the question. More recently, a diluted version of the *Mendez* exception has been afforded safe passage in two other courts of appeals. *See Camacho–Bordes v. INS,* 33 F.3d 26, 27–28 (8th Cir. 1994) (hypothesizing that judicial review should be permitted, notwithstanding execution of a deportation order, if a "colorable" claim of a due process violation emerges); *Marrero v. INS,* 990 F.2d 772, 777 (3d Cir. 1993) (same).

At least three other circuits have given *Mendez* a distinctly unfavorable reception.

In *Umanzor v. Lambert,* 782 F.2d 1299 (5th Cir.1986), the Fifth Circuit professed "serious reservations" about the *Mendez* court's holding, and noted that it had become a "sinkhole that has swallowed the rule of § 1105a(c)." *Id.* at 1303 & n. 5. The Fifth Circuit expressly rejected *Mendez* in a subsequent case, explaining that section 1105a(c) was written in plain language that brooked no exceptions to the jurisdictional bar. *See Quezada v. INS,* 898 F.2d 474, 476–77 (5th Cir.1990). The Tenth Circuit also adopted a strict interpretation of section 1105a(c), ruling that the statute's "unequivocal" language does not permit a *Mendez*-type exception to flourish. *Saadi v. INS,* 912 F.2d 428, 428 (10th Cir.1990) (per curiam). The Second Circuit recently joined the lengthening anti-*Mendez* parade. *See Roldan v. Racette,* 984 F.2d 85, 90 (2d Cir.1993) (observing that "[t]he pertinent language of § 1105a(c) constitutes a clear jurisdictional bar, and admits of no exceptions"). Still another court of appeals has signalled that it is skeptical of *Mendez. See Joehar v. INS,* 957 F.2d 887, 890 (D.C.Cir.1992) (declining to consider the *Mendez* exception in respect to an alien who had departed voluntarily).[5]

We reject the *Mendez* exception. Although *Mendez* itself presented a compelling case on its peculiar facts and the desire to afford relief is understandable on that plane, we believe the court's willingness to take liberties with the language of section 1105a(c) is mischievous and has produced bad law.[6] This straining, dubious at the time, has been rendered all the more suspect by recent Supreme Court opinions emphasizing the importance of a statute's text and plain meaning. *See, e.g., Estate of Cowart v. Nicklos Drilling Co.,* —— U.S. ——, ——, 112 S.Ct. 2589, 2594–95, 120 L.Ed.2d 379 (1992); *West*

**5.** In *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the Supreme Court held that due process requires that collateral review of a deportation order be available in a subsequent criminal prosecution for unlawful reentry when substantial defects in the underlying administrative proceedings foreclosed direct judicial review. *Id.* at 838, 107 S.Ct. at 2155. In dissent, Justice Scalia suggested that the majority's opinion necessarily betokened a rejection of the *Mendez* holding. *See id.* at 849, 107 S.Ct. at 2161 (Scalia, J., dissenting).

But Justice Marshall, writing for the majority, took pains to "express no view" on *Mendez. Id.* at 837 n. 13, 107 S.Ct. at 2154 n. 13. Thus, we take the majority's disclaimer at face value and treat the question as an open one.

**6.** One is reminded of Lord Campbell's admonition that "it is the duty of all courts of justice to take care, for the general good of the community, that hard cases do not make bad law." *East India Co. v. Paul,* 7 Moo. 85, 111 (P.C.1849).

*Va. Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 98–99, 111 S.Ct. 1138, 1146–47, 113 L.Ed.2d 68 (1991); *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *see generally* David L. Shapiro, *Continuity and Change in Statutory Interpretation,* 67 N.Y.U.L.Rev. 921, 921 & n. 2 (1992) (noting judicial efforts to narrow interpretation to coincide with the statutory text and citing recent examples). To embellish section 1105a(c) as *Mendez* suggests is to import ambiguity into words that are as unambiguous as ordinary linguistic usage permits. That approach is unacceptable, for it mutes the clarion call that Congress has sounded, and, in the bargain, muffles the Court's string of recent "plain meaning" cases.

We think that the proper approach to construing section 1105a(c) is to begin with the text of the statute and grant its words their ordinary meanings. *See Ardestani v. INS,* 502 U.S. 129, ——, 112 S.Ct. 515, 519, 116 L.Ed.2d 496 (1991); *Heno v. FDIC,* 20 F.3d 1204, 1207 (1st Cir.1994); *United States v. Charles George Trucking Co.,* 823 F.2d 685, 688 (1st Cir.1987). Beginning in this way brings our inquiry swiftly to a close, for the plain language of the statute prohibits judicial review of a deportation order once the order has been executed. There is certainly no slack in the command that the order "shall not be reviewed by any court." Having set out this command, the statute contains no mention that it is subject to any exceptions. And contrary to the *Mendez* court's view, 563 F.2d at 958, we do not believe that there is any principled way to interpret the word "departed" as failing to encompass the most relevant type of departures—involuntary departures by way of deportation. *See Webster's Third New International Dictionary* 604 (1986) (defining "depart" to include "to go forth or away: set forth: LEAVE").

When Congress plainly marks a path, courts are seldom free to leave it and roam at will in the surrounding veldt. Section 1105a(c) falls within this general rule. Having found a clear meaning in the unvarnished language of the statute, we are duty bound to honor that meaning, not to alter it by applying a judicial gloss.

Of course, there are exceptions to this rule, such as when statutory language, though unambiguous, leads to results that are absurd or are diametrically opposed to the drafters' discernible intentions. *See Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 575, 102 S.Ct. 3245, 3250, 3252, 73 L.Ed.2d 973 (1982); *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701–02, 66 L.Ed.2d 633 (1981). But the terrain on which this statute rests is inhospitable to the cultivation of such an exception because the statute, read literally, yields a sensible result. On the whole, a literal reading helps promote Congress's intention to eliminate excessive appeals and lend finality to the deportation process. A judge-made exception to section 1105a(c)'s jurisdictional bar, even one limited to "colorable" due process claims—whatever that term may eventually come to mean—can too easily expand to engulf the general rule prohibiting review, *see Umanzor,* 782 F.2d at 1303 n. 5, and thereby thwart achievement of the congressional goal. We think it is elementary that a construction which emasculates a statute is not eagerly to be embraced.[7]

Nor can petitioner's professions of good faith make a significant difference. Although there is no evidence that Baez is seeking to abuse the appellate process, his individual circumstances are insufficient to protect him from the plain language of the statute. As we have noted before, "[t]hat the reasons for Congress's decision to adopt a particular rule may not be present in an individual case . . . is no justification for failing to give effect to the rule in that case." *In re Plaza de Diego Shopping Ctr., Inc.,* 911 F.2d 820, 832 n. 20 (1st Cir.1990).

---

7. Moreover, the strict construction that the language of the statute demands passes constitutional muster. Congress has broad discretion to restrict access to the lower federal courts. *See Ankenbrandt v. Richards,* —— U.S. ——, ——, 112 S.Ct. 2206, 2212, 119 L.Ed.2d 468 (1992) (listing cases). Hence, we perceive no constitutional infirmity in the outright denial of appellate review following an alien's deportation. *See Roldan,* 984 F.2d at 90–91 (upholding constitutionality of § 1105a(c) as jurisdictional bar to habeas corpus); *Umanzor,* 782 F.2d at 1304 (same).

We add an eschatocol of sorts. Even if we were to acknowledge that some extreme situations, such as a knowingly unlawful deportation by the INS for the specific purpose of shortstopping an alien's right to review, might justify an exception to section 1105a(c)'s jurisdictional bar, petitioner's claims are not of this stripe. His case hinges on a pair of grievances. Insofar as it depends on INS's deviation from the briefing schedule, it is baseless; the BIA has wide discretion in administering compliance with briefing orders and determining the consequences of a late submission. *See, e.g., Getachew v. INS,* 25 F.3d 841, 845 (9th Cir.1994) (finding no error in BIA's discretionary decision to accept untimely brief from INS); *see also* 8 C.F.R. § 3.1(d)(1) (1994) (providing that "the Board shall exercise such discretion and authority ... as is appropriate and necessary for the disposition of the case"). Here, INS's six-day delay seems fribbling, and the BIA's decision not to vitiate the appeal on that ground strikes us as both reasonable and lawful.

Similarly, petitioner's other grievance does not indicate the need for heroic measures. The likely explanation of Attorney Murphy's failure to receive his copy of the BIA decision does not implicate purposeful scheming by the INS, but suggests the accidental misdelivery of properly addressed mail by the postal service—a vagary that plagues us all. And despite the late notification, Attorney Murphy still had time to present a motion for a stay of deportation to a member of the BIA. Once that motion was denied, he had open, but chose not to pursue, several other remedial avenues, including asking the district director or a court for a stay of the deportation order. Under the circumstances, we do not think that petitioner has alleged the type of extreme unfairness that might warrant overriding the plain language of the statute.

## V. CONCLUSION

We need go no further. We join those of our sister circuits that have followed the plain language of section 1105a(c) and found its jurisdictional bar to be absolute. Reading the statute in that manner, the petitioner's

involuntary departure from the United States deprives us of jurisdiction to examine the correctness of either the underlying deportation order or the Board's disposition of the motion to reopen. Accordingly, the petition for judicial review is

*Dismissed.*