Manuel De Jesus AGUILAR, Petitioner,

v.

Alberto R. GONZALES, Attorney General of the United States, Respondent.

No. 06–1215.

United States Court of Appeals, First Circuit.

Submitted Jan. 10, 2007.

Decided Jan. 19, 2007.

Lidia M. Sanchez, Stephanie F. Dyson, and Dyson Law, P.C., on brief for petitioner.

William C. Erb, Jr., Attorney, Office of Immigration Litigation, Peter D. Keisler, Assistant Attorney General, and Greg D. Mack, Senior Litigation Counsel, on brief for respondent.

Before LYNCH, Circuit Judge, SELYA, Senior Circuit Judge, and HOWARD, Circuit Judge.

LYNCH, Circuit Judge.

The petitioner, Manuel De Jesus Aguilar, a native and citizen of Guatemala, challenges an order of removal that was entered by an Immigration Judge (IJ) in November 2004 and summarily affirmed by the Board of Immigration Appeals (BIA) in December 2005. Aguilar argues that the IJ abused her discretion in deny-

ing Aguilar's 2004 motion to reopen his 1997 deportation proceedings. He also contends that the IJ erred as a matter of law in denying both his application for hardship waiver under Immigration and Nationality Act (INA) § 216(c)(4), 8 U.S.C. § 1186a(c)(4), and his request for voluntary departure under INA § 240B, 8 U.S.C. § 1229c. Finally, Aguilar argues that the BIA's use of its summary affirmance procedure was contrary to the requirements of 8 C.F.R. § 1003.1(e)(4). We affirm the BIA and deny the petition for review.

## I.

Aguilar initially entered the United States without inspection. In August 1992, he married a United States citizen, and on this basis Aguilar received conditional lawful permanent resident status. On May 5, 1995, Aguilar filed a first form I–751 petition to remove the conditions on residence, and he and his wife were interviewed on July 26, 1995. The I–751 petition was denied on March 18, 1996 because the wife's signature was forged. That finding of fraud provided a basis on which to deport Aguilar.

In May 1996, the Immigration and Naturalization Service (INS)[1] placed Aguilar in deportation proceedings based on three grounds, including his attempt to obtain entry through fraud. *See* INA § 241(a)(1)(A), 8 U.S.C. § 1251(a)(1)(A) (1994) (current version at 8 U.S.C. § 1227). Shortly thereafter, Aguilar filed a second I–751 petition with the INS. On October 27, 1997, an IJ found that Aguilar was deportable from the United States on one of the other grounds. The IJ granted voluntary departure until April 27, 1998. At the October 27 hearing, an agreement

was reached that Aguilar's spouse would file another visa application on behalf of petitioner and thus give the INS the opportunity to interview Aguilar and his wife on the fraud issue identified in his first petition to remove conditions on his residence. Nonetheless, no third I–751 petition was ever filed.

On December 22, 1997, Aguilar attended an interview concerning his *second* I–751 petition, which had been filed on May 13, 1996. At this interview, the INS requested evidence, including affidavits from Aguilar and his wife, due on March 23, 1998. Later that month, however, Aguilar's wife unexpectedly died before she provided an affidavit. On March 18, 1998, Aguilar responded to the request for evidence with his affidavit, his wife's death certificate, and other documents.

Aguilar then proceeded on two tracks— one before the INS District Director and one before the IJ. In April 1998, Aguilar obtained an extension from the District Director of his voluntary departure period until October 15, 1998. On May 11, 1998, the District Director denied the second I–751 petition, finding the application moot in light of the death of Aguilar's wife and also finding that Aguilar did not merit a favorable exercise of discretion because the documents used to secure his immigrant visa were fraudulent, his spouse's signature was forged on the first I–751 petition, and he and his wife gave false testimony under oath before an officer during their July 26, 1995 interview.

In April 1998, Aguilar also filed a motion to reopen his deportation proceedings before the IJ, and requested a waiver of the filing of a *joint* petition to remove condi-

---

**1.** On March 1, 2003, the functions of the INS were transferred to the Department of Homeland Security. Homeland Security Act of

2002, Pub.L. No. 107–296, § 471(a), 116 Stat. 2135, 2205 (codified at 6 U.S.C. § 291(a)).

tions on residence, arguing that deportation would result in extreme hardship.

On June 28, 1998, Aguilar voluntarily returned to Guatemala, an action which would have later consequences. He did so although his departure date had been extended to October 15, 1998 and his motion to reopen had not been acted on.

On August 20, 1998, the IJ denied petitioner's motion to reopen, but did so without prejudice; the IJ ruled that he lacked jurisdiction because the § 216 hardship waiver application first had to be filed with the INS District Director. The IJ said that if the District Director denied the waiver application, the court would allow Aguilar to amend his motion to reopen to seek review of the waiver denial. Aguilar never filed an amended motion to reopen with the IJ, nor did he file an appeal from the IJ's denial of his motion to reopen, which thus became final.

Over five years later, on March 25, 2004, Aguilar reentered the United States without inspection and was taken into custody. He was again charged with removability for being present without having been lawfully admitted. At an October 5, 2004 hearing before a different IJ, Aguilar filed a second motion to reopen his prior deportation proceedings, so that he could file a § 216 waiver application.

At a November 11, 2004 hearing, Aguilar conceded removability, sought termination of proceedings, requested waiver under § 216 of the INA, and asked for voluntary departure in the alternative.

The IJ, on November 30, 2004, denied Aguilar's motion to reopen the prior deportation proceedings on the ground that he had abandoned the claim. The IJ also pretermitted the request for hardship waiver under § 216 because Aguilar had voluntarily departed the country, and held that Aguilar was not entitled to a second

grant of voluntary departure. The IJ ordered Aguilar removed and deported to Guatemala.

The BIA summarily affirmed the IJ's decision. Aguilar timely petitioned for review by this court.

## II.

 Aguilar argues that the IJ improperly denied his 2004 motion to reopen his prior deportation proceedings. This court reviews the denial of a motion to reopen for abuse of discretion. *Jupiter v. Ashcroft*, 396 F.3d 487, 490 (1st Cir.2005). Where, as here, the BIA employs its streamlined "affirmance without opinion" procedure, *see* 8 C.F.R. § 1003.1(e)(4), we review the IJ's decision as if it were the decision of the BIA. *Jupiter*, 396 F.3d at 490.

 Under 8 C.F.R. § 1003.23(b)(1), "*[a]ny departure* from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider *shall constitute a withdrawal* of such motion [before the immigration court]" (emphasis added). Aguilar filed, in April 1998, a motion to reopen his prior deportation proceedings. He departed the United States in June 1998. His departure thus constituted, as a matter of law, a withdrawal of his 1998 motion to reopen, leaving nothing to amend.

Aguilar argues that the October 5, 2004 motion should be viewed as having been filed *nunc pro tunc* with the first motion, thus on a date before he left the country. He says that the IJ committed an error of law. But Aguilar's reading would eviscer-

ate the regulation,[2] and is refuted by the plain language of the regulation. Indeed, the regulation is not permissive, it is mandatory: "shall constitute a withdrawal." Even were there any discretion in the IJ, there clearly was no abuse.

■ Aguilar also contends that the IJ erred as a matter of law by pretermitting his application for waiver, and by finding him ineligible for voluntary departure. Aguilar failed to raise these particular arguments before the BIA, and thus they are waived. *See Opere v. INS*, 267 F.3d 10, 14 (1st Cir.2001) (arguments never raised before the BIA are waived for failure to exhaust administrative remedies).

Finally, Aguilar argues that the BIA violated its summary affirmance procedure because the IJ's decision was incorrect. *See* 8 C.F.R. § 1003.1(e)(4). The premise of the argument has already been rejected so we are not concerned with the question of the use of the summary affirmance procedure or whether we have jurisdiction to review the BIA's choice to use the procedure. *See Hoxha v. Gonzales*, 446 F.3d 210, 220–21 (1st Cir.2006).

The petition for review is *denied*.

---

**2.** In an earlier case, *Baez v. INS*, 41 F.3d 19 (1st Cir.1994), we addressed a different provision of law, then § 106(c) of the INA, which provided that once the alien had departed, no court would review a deportation order. *See id.* at 22. We agree that *Baez* does not control this case.